***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter of this claim. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer and The Phoenix Insurance Company was the carrier on the risk on the date of injury, September 24, 2004.
5. Plaintiff's average weekly wage is $700.00, resulting in a weekly compensation rate of $466.69.
6. The issues for determination are as follows:
 a. Whether plaintiff suffered a compensable injury by accident to his right foot and left knee?
 b. If so, to what benefits is plaintiff entitled?
 c. Whether plaintiff commenced a trial return to work on June 30, 2005 and if so, whether it was successful?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records, I.C. Forms, out of work notes, discovery; and
 b. Stipulated Exhibit #2: printout of indemnity payments, submitted subsequent to the hearing before the Deputy Commissioner.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 64 years old and had obtained a high school equivalency certificate by passing the General Educational Development Test ("GED"). Plaintiff began working for defendant-employer as a truck driver in December 1995. Plaintiff's job duties included making deliveries to K-Mart and Marshalls stores and unloading freight from his truck. Plaintiff unloaded boxes by hand weighing between 10 to 70 pounds. At the time of the hearing before the Deputy Commissioner, plaintiff remained on defendant-employer's payroll, however, he subsequently left his employment due to continuing treatment for colon cancer.
2. On September 24, 2004, plaintiff was unloading a track used to roll boxes off his truck. A piece of the track slipped from his hands and fell, striking plaintiff's right foot. As plaintiff turned to avoid the piece of falling track, he struck his left knee on a track stand. Plaintiff reported the foot injury to his supervisor, Bobby Josey, on September 26, 2004, but did not mention knee pain at that time.
3. On or about October 12, 2004, plaintiff began treatment with Kathy Pickett, a physician's assistant in the office of Dr. Marnie Marlett, a family practitioner. Plaintiff was diagnosed with a fifth metatarsal fracture and was placed in an ankle fracture boot. Plaintiff was subsequently referred to Wake Forest University and began treatment with Dr. Charles Myers, a podiatrist.
4. Defendants accepted plaintiff's right foot injury as compensable pursuant to a Form 60 filed on December 30, 2004. Defendants paid plaintiff temporary total disability benefits from October 11, 2004 through December 13, 2004. In December 2004, Dr. Myers returned plaintiff to light duty work. Plaintiff was paid temporary partial disability benefits from *Page 4 
December 13, 2004 to May 23, 2005, when he stopped working due to the chemotherapy treatments he was undergoing for his unrelated colon cancer.
5. Plaintiff first reported that he was experiencing pain in his left knee on December 29, 2004, during an examination with Dr. Myers. He gave a history of injuring his knee in the September 24, 2004 work-related accident and opined that due to the severity of his right foot problems, his left knee had not been previously examined.
6. Ms. Pickett opined that it was possible that plaintiff's pain medication could have masked his left knee pain; however, it is noted that plaintiff did not complain of knee pain during the approximately 18 days between the date of injury and obtaining a pain prescription from Ms. Pickett, nor did he complain of knee pain between October 29, 2004, the approximate date he stopped taking pain medication and December 29, 2004.
7. On February 14, 2005, plaintiff presented to Dr. John Ritchie, an orthopedist. Plaintiff gave a history of right foot and left knee injury consistent with that related above. Dr. Ritchie focused primarily on the knee injury. Dr. Ritchie took x-rays of plaintiff's knee and diagnosed him with evidence of osteoarthritis on the inside of the left knee and arthritis of the patellofemoral joint of the kneecap. Based solely upon plaintiff's account of the incident, Dr. Ritchie opined that plaintiff suffered a contusion of the left knee that aggravated the severe arthritis of the knee. He placed plaintiff on anti-inflammatory medication, provided a brace for the knee and recommended a strength-training program. Dr. Ritchie opined that plaintiff might benefit from cortisone injections but the right foot injury precluded that option.
8. Following an MRI scan performed on April 18, 2005, Dr. Ritchie modified his diagnosis to include a possible tear of the lateral meniscus. At that time, he recommended that *Page 5 
plaintiff undergo arthroscopic surgery. At the time of the hearing before the Deputy Commissioner, plaintiff had not yet had surgery.
9. Dr. Ritchie opined that plaintiff's use of the fracture boot might have caused an alteration of his gait, which could have placed additional stress on the left knee; however, he noted that it was unlikely that plaintiff would experience symptoms so soon solely as a result of a limp-induced change of gait. Dr. Ritchie opined that based upon plaintiff's lack of symptoms prior to the date of injury and the onset of knee symptoms within a few days of the injury, his current condition was causally related to the work-related injury of September 24, 2004. When informed that plaintiff did not report knee pain until approximately three months after the work-related incident, Dr. Ritchie recanted his opinion regarding causation.
10. When Dr. Myers moved, plaintiff's foot care was transferred to Dr. Eric Siceloff, another podiatrist. Plaintiff presented to Dr. Siceloff on February 23, 2005 and gave a history of injuring his right foot at work. He did not mention any injury to the left knee. Dr. Siceloff diagnosed plaintiff with a number of foot problems, but limited the work-related injuries only to the fracture of the fifth metatarsal. Plaintiff continued treatment with Dr. Siceloff who ultimately released plaintiff to return to light-duty work with regard to his right foot on or about March 23, 2005. Dr. Siceloff opined that regarding the foot injury, plaintiff could perform his truck-driving job so long as he did not have to load or unload freight.
11. Orthopedic surgeon, Dr. Glenn Perry reviewed plaintiff's medical records, including x-rays and the April 18, 2005 MRI scan. Dr. Perry opined that the February 14, 2005 x-rays of plaintiff's left knee revealed significant degenerative changes of the medial compartment and patellofemoral osteophytes consistent with advanced osteoarthritis. Based upon the x-rays and the MRI scan, Dr. Perry opined that plaintiff had had osteoarthritis in his left *Page 6 
knee for five to ten years prior to his September 24, 2004 injury. He further testified that in most cases, osteoarthritis is a slow, gradual process that takes years to occur and is most commonly caused by chronic wear and tear and use. Dr. Perry noted that it is common for a man in his sixties to have osteoarthritis in his knees and that it is possible for a person's asymptomatic arthritis to become symptomatic without any particular trauma or injury.
12. Based on his experience and review of plaintiff's medical records, Dr. Perry opined that plaintiff's September 24, 2004 injury neither caused nor aggravated the osteoarthritis in his left knee. Dr. Perry noted that even if plaintiff had struck his left knee on September 24, 2004, a direct blow to the knee would not have caused or aggravated the arthritis in the left knee. Rather, it was more likely that plaintiff had osteoarthritis in his left knee prior to the injury and that it coincidentally became symptomatic three months later and was caused by chronic wear and tear. Dr. Perry stated that if plaintiff had injured his left knee during the work incident, he would more than likely have experienced symptoms within a short period of time after his left knee was injured.
13. Dr. Perry further opined that the mechanism of injury was not consistent with a lateral meniscus tear. Based upon the MRI, plaintiff's age and the degree of the degenerative condition of his knee, Dr. Perry believed that a degenerative process caused the tear.
14. Based upon the greater weight of the medical and lay evidence of record, including (1) the lack of knee symptoms until approximately three months after the date of injury, (2) the lack of symptoms both prior to beginning pain medication and after plaintiff had ceased to take pain medication, tending to negate the argument that the medication masked plaintiff's knee pain, (3) plaintiff's pre-existing degenerative arthritic condition that provides an alternate cause for his pain and meniscus tear, and (4) plaintiff's failure to report the knee injury *Page 7 
as part of the occurrence of September 24, 2004 to his supervisor and many of his treating physicians, the Full Commission finds as fact that plaintiff's current knee condition is not related to the work-related incident of September 24, 2004.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. "In a workers' compensation claim the employee has the burden of proving that his claim is compensable." Holley v. ACTS, Inc.,357 N.C. 228,231, 581 S.E.2d 750, 752 (2003). Plaintiff has failed to meet his burden of showing that the condition of his left knee was the result of a work-related accident occurring on September 24, 2004. Accordingly, plaintiff is not eligible for medical compensation for the treatment of that condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to meet his burden of showing that he missed any additional time from work as a result of the work-related injury to his right foot on September 24, 2004 for which he has not already received all compensation to which he is entitled. For this reason, plaintiff's claim for additional indemnity compensation based upon injury to his left knee must be denied. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 8 
1. Plaintiff's claim for medical compensation for his left knee condition must be and is hereby denied.
2. Plaintiff's claim for additional indemnity compensation must be and is hereby denied.
3. Each party shall pay their own costs.
This the __ day of August 2007.
 S/________________________
PAMELA T. YOUNG
COMMISSIONER
CONCURRING: S/________________________ DANNY LEE McDONALD COMMISSIONER
S/________________________ CHRISTOPHER SCOTT COMMISSIONER